Okay, people first. They're Parker and please support. I'm Robert Burke with the Office of the State Appellate Defender. I represent the defendant, Marvin Parker. We're asking this court to remand this case for a new trial. There's two issues that I want to discuss this morning. One, the prosecutor misconduct and two, the consecutive sentences. In the prosecutor misconduct, the facts of the case are there was an armed robbery captured on videotape. There were two armed robbers. One of them was DeMonte Taylor. The only question at trial was who was the second person on the videotape? Who was the shooter? On that question, the jury stayed out four and a half hours. DeMonte Taylor... How do we know that's what kept them out for four and a half hours? I mean, I'm just asking. There was... We don't really know what they were talking about in the jury room, do we? There's no way to know what the jury does back there. They might have been playing poker. We just don't even know. They might have been here. Okay. I served on the jury once. It was a peculiar learning experience. I'm sure. But the fact is that that was the question. Who is that guy on the videotape that DeMonte Taylor initially said was Mr. Parker and then later said was Duke? Mr. Foster, the guy who got shot, testified that it was Mr. Parker. But DeMonte Taylor's father, Arthur Taylor, testified that he had talked with General Foster, the guy who got shot. And Jeremy Foster told him it was a guy named Duke. Now, after Mr. Taylor or Arthur Taylor testified that way, the state did not recall Jeremy Foster to ask him, did you really tell Arthur Taylor that? They did not put on the vote. DeMonte Taylor gave sworn statements under oath at his guilty plea, unusual procedure, but that's what happened. And that transcript was given to the jury. They said it was Mark Parker. Then before the trial started, a week before the trial started, he gave a videotape statement. The videotape was not offered in evidence. A videotape statement to Prosecutors Deborah Phillips and Steve Sallerson and to the state's attorney's investigator, Delaney. But I don't remember his first name. The state, again, the general rule is that an attorney only gets to be a witness in a case if it's necessary. Well, you know, let me ask you, I agree with that. But your opponent says that the record on appeal does not state that Delaney was anywhere in the courthouse. You said he's downstairs. Where's the evidence of that, that Delaney could have testified instead of the attorney? I can point to two things, Your Honor. First of all, the state had a burden of going forward with the evidence at a hearing before Judge Cook, and they did not do it. And second of all, they admit on appeal that Ms. Phillips' testimony was not necessary. So where was Delaney? I don't know. They said he could come back up here, but they didn't want to take the time. I don't know where you got that about the unnecessary testimony, because I didn't see that. The state, in their plain air argument, they say that it was redundant, that it was not needed, that it didn't affect the verdict. I don't know of any other way to say unnecessary. The state didn't prove unnecessary below, and they admit that it was unnecessary. They didn't prove necessary below, and they admit that it was unnecessary in their brief, in their plain air argument. The cases the state cites, including Bauer, a civil case not about the prosecutor, who has the majesty and the prestige of that office. Bauer, Justice Stewart authored the opinion of Bauer, civil case. That was a case where it was found necessary for the attorney to do that. The cases they cite, Langdon and Jackson, when I read those, I see that it was necessary. And the case I cite in my reply brief, Janes, discusses those two cases and says in those two cases it was necessary for the prosecutor to testify. Let me ask a question. My understanding is before the prosecutor was called to testify, there was a sidebar of some kind with the judge. And what was said at that? I mean, what was said about Delaney and his presence? I mean, my understanding is, you know, what was said was we could get words to the effect that we could get Delaney here, or we could just call her, and the defense attorney said, go ahead and call her, or words to that effect. And I know you have an ineffective assistance of counsel claim, too. But there was no objection to her being called. Correct, Your Honor. Right. And there was nothing specific, really, about where Delaney was. That's correct, Your Honor. Okay. I think that you've summarized all that very well. It was kind of like everybody was telling the judge, oh, judge, we don't want to make you mad and slow anything down, so, you know, we can do it this way, and everybody agreed. Certainly everybody agreed. I don't understand why, but they did agree. I don't understand what juries do. I don't understand what lawyers have objections to. You don't understand what prosecutors do, right? I certainly don't understand what prosecutors do. I've never been one. Good for you. So I think the issue is pretty clear here. First of all, even if it was necessary for her to testify, it wasn't necessary for her then to continue as a prosecutor in the case and to give a closing argument. On the hearing, the state had the burden of going forward with the evidence, but on an attorney's duty to withdraw, that's not on opposing counsel, that's on the attorney. She had a duty herself to say, Your Honor, I'm withdrawing from this case. Mr. Salison will take it from here, and she didn't do it. And then in her closing argument, she argued about herself as a witness. The state says it was a brief reference to herself as a witness, but it was still a reference to herself as a witness. Most of the closing or rebuttal argument that was damaging here was Salison talking about her as a witness. And the state does not address that in its brief. The state does not talk about everything that Salison told that jury about her being under oath and her job to prosecute fairly or whatever. Does the state have any right to rely on the fact that defense counsel agreed to allow her to testify? In how they go forward with the case? I mean, first off, the defense attorney said, Go ahead, it's fine with me. Yes, Your Honor, this was not objected to. And that is the fourth argument on appeal in effective assistance to counsel. What was the strategy in doing that? What did this attorney gain for Mr. Parker, his client, by just sitting there like a bump on a log, not doing anything? He could have said, Prove your case. I object. He could have put it in a post-trial motion. After the fact, and there's plenty of time to think about it, he didn't do that. On the consecutive sentences, I try to attach important documents to our brief and five briefs. The sentencing order is at page R.C. 362. There was nothing at the sentencing hearing that showed mandatory consecutive sentencing. There was nothing at the sentencing hearing that showed discretionary consecutive sentencing. The only thing at the sentencing hearing that had anything to do with consecutive sentencing was the prosecutor's statement that great bodily harm equals severe bodily injury. The cases don't hold that. The state found one case, and when that case was remanded, the circuit court, the fact finder, said there was a difference between great bodily harm and severe bodily injury, and reduced the consecutive sentences concurrent. I'll talk about that in my reply brief. The only thing that's marked on here is that it was great bodily harm, which gives a different sentence under the Truth in Sentencing Act. I believe it's 75% instead of 50% or something like that. And so that's marked great bodily harm. There's nothing said about severe bodily injury. So we're asking that to be reduced from consecutive sentences. And if I may, the state says that this is mere semantics. It's not mere semantics that Mr. Parker is going to have to serve three extra years in prison.  May it please the court, counsel. Jennifer Canvan on behalf of the people. Just because, with regard to issue one, just because a prosecutor testifies and then delivers a part of the closing argument, does not necessarily mean that a reversible error has occurred. I think what... Do you think that's a good idea for the prosecutor to testify in a jury trial and then give part of the closing argument? Well, with regard to the first part of your question, whether it's a good idea for the prosecutor to testify, of course the courts have said that the judge can do that in his discretion where it's necessary. With regard to whether it's a good idea for the prosecutor who has testified to give a closing argument, I think the case law is pretty clear that a prosecutor should withdraw at that point. But as the appellate court held in Langdon, that's not necessarily a reversible error, even where a testifying prosecutor gives a closing argument. I think what Langdon and Jaynes together show is that a reviewing court should consider the content of the testimony, the content of the closing argument, and the overall contextual relevance of the testimony in the course of the trial. And in this case, given the content of Phillips' testimony and the purpose for which it was admitted at trial, and the rest of the evidence, and given the content of her portion of the closing argument, the defendant has failed to prove a plain error occurred here under either prong of the Heron test. In this case, Taylor, on the stand, denied telling prosecutors four days prior to trial that the defendant was the shooter. This was under questioning by Mr. Sallerson. And so it was necessary to perfect that impeachment by offering evidence that he had made that statement. And this goes to the defendant's argument that the content of Ms. Phillips' testimony was unnecessary. It was necessary. If the State hadn't perfected that impeachment, we'd be here today arguing about that. What's the evidence in the record that Delaney was not available? Beg your pardon, Your Honor? What is there in the record that shows that Delaney was not available? And I'm getting to whether or not it was necessary for her to testify. Yes. What we know is that at that sidebar, which you mentioned, Your Honor, Mr. Sallerson asked the judge if he could call Phillips, quote, as opposed to waiting for Delaney. Those were his words. And so the court accepted the State's factual representation, I think, that there would be a delay. Now, do we know any more than that? I don't think we do. Mr. Burke referred to Delaney as the State's attorney's investigator. Is that correct? I believe so, yes. And, you know, they ought to have some control over where he is during a trial, shouldn't they? He was on the witness list, Your Honor. But still, the defendant hasn't met his burden of proving that Delaney was available or the court abused its discretion in finding that Phillips' testimony was necessary, that the court abused its discretion in accepting the State's explanation that there would be some sort of a delay in calling Delaney. So on this record, the defendant can't show it was error for Phillips to be called as a witness. And you rely on Bauer for that, and your opponent distinguishes Bauer. What's your response to that? Well, Your Honor, there are other cases also that hold that it's not necessarily that the judge has the discretion to admit the testimony of a prosecutor where necessary. For example, Langdon, Jackson, and I think even Janes says that. So just because Bauer is a civil case doesn't mean that the judge didn't have the discretion here to admit the testimony of the prosecutor. And further, the defendant can't prove plain error from the admission of that testimony, considering that the issue for which Phillips was called was the impeachment of Taylor on the issue of whether he made a third prior and consistent statement as to the identity of the shooter. That can't have been the deciding factor in the jury's verdict. Taylor acknowledged on the stand, telling police on the date of his arrest, about two years before the trial, that the defendant was the shooter. And Taylor acknowledged on the stand, testifying at his own plea hearing that occurred about six weeks before the trial, that the defendant was the shooter. But Taylor denied telling prosecutors four days before the trial that the defendant was the shooter. So first, Taylor's testimony that he did not implicate the defendant four days before the trial, that wasn't testimony that exonerated the defendant. And Phillips' testimony didn't go to the identity of the shooter. It went to the collateral issue of whether Taylor had made that prior and consistent statement. A third prior and consistent statement. And it's important to note that if the state had not perfected that impeachment, which again would itself have been error under Puppelberg, which is cited in the People's Brief, the jury still would have had before it the substance of Taylor's two prior and consistent statements. The jury was instructed that it consider those two statements substantively. One was on tape, one was made under oath, and Taylor admitted to making both of them. Let me make sure I understand what you're saying. Are you arguing that impeachment of testimony of the identity of the shooter would be a collateral issue? Your Honor, this was the impeachment of testimony regarding whether Taylor had made a statement. Okay. Okay. Seems like a pretty direct issue to me when you're talking about the identity. You know, he says that's who did it. Another time he says no, it was somebody else who did it. Well, the statement, well, the issue was whether he had made that statement, though. And again, the testimony was admissible only for purposes of impeachment, whereas Taylor's two prior and consistent statements were admissible substantively. The jury could consider them substantively. So I don't think that the defendant can prove prejudice here. One other point. Taylor's father did not testify that Foster told him that Duke shot him. Taylor's father's quote is excerpted on page 19 of the People's Answer Brief, and I don't see that in that quote, the idea that Foster said Duke shot him. I don't see that. I don't see the defendant's point that this was on videotape. That's true. The videotape was outside of the convenient margin. When you see the video, you'll see that the camera appears to have been posted on the corner of the building or maybe a light pole or something. It's a ways away. And the shooter is identifiable as a man approximately the same size as the victim. But it's not the good look that would have occurred if the shooter had gone into the convenience store, which he did not do. With regard to the question of plain error regarding Phillips' delivery of the argument, again, the nature of her testimony on this housekeeping matter affecting the impeachment shows that Phillips' delivery of this portion of the closing argument can't have over-persuaded the jury. This case is more like Langdon than it is like James. In Langdon, the testifying prosecutor delivered the first half of the closing argument as here. The issue was preserved for appeal. The judge held that it was not reversible error. In that case, the testifying prosecutor had been instructed not to refer to the facts that he testified to. In this case, admittedly, Phillips referred briefly to the fact that she had testified to, but didn't refer to herself as the source of that testimony. This is not a case like James, which I'd encourage the court to take a look at, which is cited in the defendant's reply brief. In that case, the testifying prosecutor chose to testify not to perfect any impeachment, but to vindicate his personal honor. And his closing remarks relied extensively on that testimony and essentially turned the entire trial into a referendum on his personal honor and integrity and professionalism. That's not what happened here. With regard to the defendant's assertion that most of the rebuttal concerned Phillips' integrity, I question that assertion. And in any event, in Langdon, it's made clear that the prosecutor in rebuttal, closing argument in that case, did refer to the testifying prosecutor's testimony and the source of that. And that does not alone constitute reversible error. Very quickly, with regard to the third issue, in this case, the court imposed consecutive sentences without comment. And so this court should assume, must assume, that the trial court considered all proper factors, including that severe bodily injury was found. The defendant here is asking this court to assume that the court imposed consecutive sentences based on a finding of great bodily harm instead of severe bodily injury. But the only evidence he has of that is the fact that the state argued that great bodily injury was synonymous with severe bodily harm. But there's no evidence that the court accepted that argument. Thank you. The state still says, we had all this evidence, we had all this evidence, we had all this evidence, we had all this evidence. It doesn't sound to me like it was necessary. And they certainly didn't prove it. In Langdon, I believe the prosecutor made a passing remark during closing argument. It wasn't anything big. Here, Sallerson, he says, when we met with Ms. Phillips and I, you heard Ms. Phillips testify, he told her Thursday, with me there, and I'm asking, blah, blah. Then he must have gotten sidetracked and repeats the same thing, almost word for word. When he met with Ms. Phillips and I, you heard Ms. Phillips testify, he told her Thursday, with me there, blah, blah. Then, that's on page 281. On 287, we have the job, Ms. Phillips, and my job is to prove beyond reasonable doubt, blah, blah, blah. Ms. Phillips asked him questions under oath because that can happen. It doesn't say who was under oath. This all goes to confusing the jury about the role of the prosecutor and about the role of an advocate who's arguing for one side in the role of a witness who should be impartial. Then, finally, at 288, ladies and gentlemen, I ask you on behalf of the people of the state of Illinois, Ms. Phillips and I, he keeps drawing Ms. Phillips into this. He keeps referring to her. I think that he knew exactly what he was doing. I believe he was doing it on purpose. He was trying to infect this jury. Thank you, Your Honor. Thank you. Thank you all. We'll be in recess until 9 o'clock tomorrow morning.